|  | CLOSED |
|---|---|
| NOT FOR PUBLICATION | |

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

_____
:
MARION GLASPER,                    :
                                   :
         Plaintiff,                :    Civ. No. 05-3576 (JAP)
                                   :
   v.                              :
                                   :    **OPINION**
JO ANNE B. BARNHART,               :
COMMISSIONER OF SOCIAL SECURITY,   :
                                   :
         Defendant.                :
_____:

APPEARANCES:

Agnes Wladyka, Esq.
Abromson & Carey
60 Park Place, Suite 601
Newark, NJ 07102
    *Attorney for Plaintiff*

Christopher Christie
United States Attorney
Margaret A. Donaghy
Special Assistant United States Attorney
Social Security Administration
26 Federal Plaza, Room 3904
New York, NY 10278
    *Attorneys for Defendant*

PISANO, District Judge.

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act

("Act"), as amended, 42 U.S.C. § 405(g) and Section 1383(c)(3). Plaintiff Marion Glasper

("Plaintiff" or "Glasper") seeks review of the final decision of the Commissioner of the Social

Security Administration ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSIB").  The Court has jurisdiction to review this matter under § 405(g) and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78.  The issue presented is whether the Commissioner's decision to deny Plaintiff's application for DIB and SSIB is supported by substantial evidence.  Because the record provides substantial evidence supporting the Commissioner's decision that Glasper was "not disabled" and thus not entitled to benefits, the Court affirms the Commissioner's decision.

**I. BACKGROUND**

    *A. Glasper's Personal and Medical History[1]*

Glasper is a 45-year old man with a high school education who lives in Paterson, New Jersey.  He stands 71 inches tall and, as of February 2005, weighed approximately 312 pounds.  For many years, Glasper worked as a laborer.  After an he sustained an injury in the winter of 2001, however, Glasper was forced to perform light duty work until July 2002 at which time he stopped working.  Notably, Glasper's employment terminated because he lacked the necessary Spanish skills to perform his job as a receptionist, not because of his health condition.  After the termination of his light duty job, Plaintiff did not seek new a job and collected unemployment benefits.  At the time of his application for DIB and SSIB, Glasper remained unemployed.

Plaintiff alleged that he became disabled on July 10, 2002 due to osteoarthritis and pain in both knees.  Glasper's medical records reveal, however, that his knee problems date back to 1995

---

[1] A more detailed summary of Plainitff's medical history can be found in the February 25, 2005 Decision by Administrative Law Judge Katherine C. Edgell.

when doctors diagnosed him as having degenerative joint disease in both knees.  In September 2000, Glasper was diagnosed with a tear of the lateral meniscus and patellofemoral osteoarthrosis, and he underwent arthroscopic surgery in September 2001.  In January 2002, Plaintiff was diagnosed with another meniscal tear and had a second arthoscopic surgery in April 2002.  Over the period of time from June 2002 until February 2005, Glasper saw a number of different doctors who diagnosed him with various ailments ranging from joint effusion in his knees to chronic Achilles tendenopathy.  During this time, Glasper participated in physical therapy, but nonetheless experienced decreased range of motion and significant pain in his knees.  To relieve his pain, Plaintiff takes over-the-counter pain medication.  In addition to his knee ailments, Plaintiff has been diagnosed with the following:  obesity, high blood pressure, hearing loss, and tendinitis in his left Achilles.

      Plaintiff testified that he can stand for thirty minutes and sit up for one hour.  He is able to perform routine household chores, such as cleaning, preparing meals, and dressing himself (but experiences some difficulty putting on socks).  Further, Glasper is able to go grocery shopping and visit relatives.  However, he typically spends the bulk of his day sitting and watching television.

      Two of the doctors who examined Glasper during the relevant period—Dr. Milan Galish ("Dr. Galish") and Dr. Karen Young ("Dr. Young")—concluded that he was able to perform sedentary work.  Dr. Galish evaluated Plaintiff in December 2003 and determined that, though he had some limitations, Plaintiff could frequently carry items weighing ten pounds, could stand or work for at least two hours in an eight-hour workday, and could sit for about six hours in an eight-hour workday.  (Administrative Record ("AR") at 237-239.)  In April 2004, Dr. Young

opined that Glasper "should be capable of performing a sedentary level job where he would sit for 6 hours and stand for 2 hours." (AR at 340.) A third doctor who examined Plaintiff, Dr. Adriana Nor ("Dr. Nor"), appeared to state in a portion of her report that Glasper's medical impairments prevented him from working. However, later in the same report, Dr. Nor clarified her opinion and stated that Glasper possessed "[f]unctional capacity adequate to perform normal activities despite handicap, discomfort, or limited mobility of one or more joints." (AR at 178.)

### B. Procedural History

On May 15, 2003, Glasper applied for DIB and SSIB alleging disability due to osteoarthritis of the knees and high blood pressure beginning July 10, 2002. The Social Security Administration denied Plaintiff's claim both initially and upon reconsideration. He filed a timely request for a hearing on May 10, 2004. On February 8, 2005, a hearing was held before Administrative Law Judge ("ALJ") Katherine C. Edgell ("Edgell"). Glasper personally appeared and gave testimony at the hearing. On February 25, 2005, ALJ Edgell issued a written decision denying Glasper's claim. ALJ Edgell made the following findings in her decision:

> 1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through March 31, 2007.
>
> 2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> 3. The claimant has the following medically determinable . . . "severe" impairments, based on the requirements of the Regulations; degenerative joint disease (DJD) of the right knee, patellofemoral osteoarthritis in both knees, status-post arthoscopic meniscectomy of the bilateral knees; focal Achilles tendenopathy on the left; and obesity. (20 C.F.R. 404.1520(c) and 416.920(c))
>
> 4. These medically determinable impairments do not meet or medically equal any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.

    5. The [ALJ] finds the claimant's allegations regarding his limitations are not totally credible, as they are not supported by the objective or other substantial evidence of record.

    6. The claimant has the residual functional capacity to sit for six hours, stand and/or walk for two hours, and lift and carry objects weighing up to 10 pounds. This assessment is consistent with a full range of sedentary work.

    7. The claimant's past relevant work as a receptionist did not require the performance of work-related activities precluded by his residual functional capacity. (20 C.F.R. 404.1565 and 416.965)

    8. The claimant's medically determinable impairments do not prevent him from performing his past relevant work.

    9. Given a residual functional capacity for sedentary work, and the claimant's age, education and vocational background, a finding of "not disabled" is also directed by medical-vocational rule 201.24, Appendix 2 to Subpart P of Regulations No. 4 (20 C.F.R. Part 404).

    10. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 C.F.R. 404.1520(f) and 416.920(f)).

(AR at 28-29.) Plaintiff requested that the Appeals Council review the ALJ's decision. The Appeals Council denied that request, first on July 1, 2005, and again on August 22, 2005 after it considered additional information. In both instances, the Appeals Council "found no reason under [their] rules to review the Administrative Law Judge's decision." (AR at 7, 12.)

## II. DISCUSSION

### A. Standard of Review

    The standard under which the District Court reviews an ALJ decision is whether there is substantial evidence in the record to support the ALJ's decision. *See* 42 U.S.C. 405(g); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). "[M]ore than a mere scintilla," substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The inquiry is not whether the reviewing court would have made the same determination, but rather, whether the Commissioner's conclusion was reasonable.  *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).  Substantial evidence, therefore, may be slightly less than a preponderance.  *See Hanusiewicz v. Bowen*, 678 F. Supp. 474, 476 (D.N.J. 1988).

The reviewing court, however, does have a duty to review the evidence in its totality.  *See Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984).  As such, "a court must take into account whatever in the record fairly detracts from its weight." *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (internal quotations omitted).  The Commissioner has a corresponding duty to facilitate the court's review:  "[w]here the [Commissioner] is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence." *Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987).  As the Third Circuit has instructed, a full explanation of the Commissioner's reasoning is essential to meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978).  Nonetheless, the district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

### B.  Establishing a Disability Under the Act

"In order to establish a disability under the Social Security Act, [a plaintiff] must

demonstrate some medically determinable basis for an impairment that prevents him from engaging in any substantial gainful activity for a statutory twelve-month period." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 118 (3d Cir. 2000) (internal quotations and citations omitted). Further, a claimant must demonstrate that the severity of his impairment(s) renders him "not only unable to do his previous work" but also, "considering his age, education, and work experience," unable to "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

Pursuant to 20 C.F.R. § 404.1520, the Commissioner employs the following five-step sequential analysis to evaluate each case and determine whether a claimant is "disabled" or "not disabled":

1. If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2. If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3. If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4. If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

5. Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education and past work experience to determine whether or not he is capable of performing other work which exists in the national economy. If he is incapable, a finding of disability will be entered. On the other hand, if the claimant can perform other work, he will be found not to be disabled.

20 C.F.R. § 404.1520(b)-(f).

7

### C. *The ALJ's Decision is Supported by Substantial Evidence*

Analyzing the evidence under the five-part framework, the ALJ concluded that Glasper was not disabled and that he had the residual functional capacity to perform his past relevant work as a receptionist and other sedentary jobs that exist in the national economy. Plaintiff challenges the ALJ's decision on three grounds: (1) the ALJ failed to give serious consideration to Glasper's assertions of pain, (2) the ALJ wrongly concluded that Plaintiff's impairments do not qualify as a Listed Impairment, and (3) the ALJ erred in finding that Glasper can perform the full range of sedentary work. The Commissioner responds that the ALJ's decision is supported by substantial evidence. As explained below, the Court finds that Plaintiff's challenges to the ALJ's decision lack merit because there is substantial evidence supporting the ALJ's findings.

**1. Plaintiff's Assertions of Pain**

Plaintiff correctly notes that "[p]ain may be disabling" and "a claimant's assertions of pain must be given serious consideration . . . even where those assertions are not fully confirmed by objective evidence." *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981). The Court, however, is not persuaded by Plaintiff's conclusory statement that the ALJ must not have considered Glasper's assertions of pain simply because the ALJ denied Glasper's application for benefits. A review of the ALJ's decision reveals that she did consider Glasper's assertions of pain, but found—in light of other evidence—that the pain described did not amount to a disability: "While there is no doubt that the claimant has some pain in light of his knee impairment, . . . the Administrative Law Judge is not persuaded that the claimant's pain is at a level of severity, or occurs with such frequency and persistence, as to preclude the performance of all levels of activity on a sustained basis." (AR at 26.) This determination is supported by the

8

following evidence in the record:  (1) Glasper was not taking prescription medication for pain relief, (2) he was able to perform several day-to-day activities, including shopping for groceries, preparing meals, dressing himself (with some difficulty putting on socks), and visiting relatives, and (3) though he requested a prescription for a cane, Glasper did not require two hand-held assistive devices for ambulation.

Further, though some of the objective medical evidence corroborated Plaintiff's assertions of pain, the record evidence, taken as a whole, does not support Plaintiff's claim that his pain rises to the level of a disability.  The objective medical evidence establishes that Glasper suffers from a painful arthritic condition in his knees, he lacks full range of motion in his knee, and he is unable to engage in physical labor.  Tellingly, however, none of the many doctors that have treated Glasper since 2002 determined that he could not work, and none have prescribed pain medication that is consistent with Plaintiff's assertions of pain.  The ALJ, while crediting Glasper's assertion that he suffers pain is his knees, found that such pain is not disabling in light of the objective medical and non-medical evidence.  The Court thus disagrees with Plaintiff's contention that "no objective medical findings . . . support the Administrative Law Judge's feeling that the plaintiff was able to perform substantial gainful activity."  (Plaintiff's Brief at 14.)   To the contrary, the ALJ's finding that Glasper's pain did not preclude him from engaging in sedentary work is supported by substantial evidence.

**2.  Listed Impairments**

Next, Plaintiff contends that the ALJ erred in concluding that Glasper did not meet one of the Listed Impairments set forth in  20 C.F.R. Pt. 404, Subpt. P, App.1.  Pursuant to 20 C.F.R. § 416.920(d), the Social Security Administration must find a claimant disabled, without

considering age, education and work experience, if the claimant's impairment(s) "meets or equals a listed impairment in Appendix 1." Plaintiff contends that he meets Listed Impairment 1.03 which covers "[r]econstructive surgery or surgical arthodesis of a major weigh-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b." 20 C.F.R. Pt. 404, Subpt. P, App.1. The objective medical evidence demonstrates, however, that Plaintiff did not have reconstructive surgery or surgical arthodesis. Instead, Plaintiff underwent an arthoscopy and a meniscectomy, which are not procedures that involve the fixation of weight-bearing joints.[2] Further, the evidence before the ALJ did not establish that Glasper lacks the ability to ambulate effectively, *i.e.* that he demonstrated "insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R. Subpt. P, App. 1, § 1.00B2b. It is undisputed that Plaintiff has the ability to walk and perform general household chores without the use of two hand-held devices. The Court thus finds that substantial evidence supports the ALJ's conclusion that Glasper's "impairments do not meet or medically equal any of the listed impairments in Appendix 1, Subpart P, Regulations No.4." (AR at 28.)

Plaintiff argues that, even if his condition does not qualify for a Listed Impairment, his various impairments, taken together, are the equivalent of a Listed Impairment. Specifically, Plaintiff contends that the ALJ failed to consider whether the combination of his knee ailments, hypertension, hearing loss, and obesity amounted to a condition equal to a Listed Impairment. Initially, the Court notes that Plaintiff did not submit to the ALJ evidence of his hearing

---

[2] Arthroscopy is the "examination of the interior of a joint with an arthoscope" and meniscectomy is the "excision of a meniscus of the knee joint." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 157, 1127 (30th ed. 2003).

impairment. Indeed, Plaintiff's application for benefits did not mention any hearing loss, nor did Plaintiff testify that he had any hearing problems. This is not surprising because Glasper's hearing test occurred on February 18, 2005, ten days after the ALJ's hearing. Thus, the Court will not consider this evidence in determining whether the ALJ's decision was supported by substantial evidence. *Jones v. Sullivan*, 954 F.2d 125, 128 (3d Cir. 1991) ("Because this evidence was not before the ALJ, it cannot be used to argue that the ALJ's decision was not supported by substantial evidence.").[3] As to Plaintiff's hypertension and obesity, (1) there are no objective findings indicating that Glasper has a cardiac impairment and (2) though the evidence shows diagnoses of obesity during the relevant period, there is no evidence demonstrating that Plaintiff's obesity, independently or combined with his knee ailments, amounted to the equivalent of a Listed Impairment or resulted in an inability to engage in sedentary work.

Moreover, it is clear that the ALJ did consider the evidence as it related to all of Glasper's impairments. Indeed, the ALJ noted that Plaintiff presented evidence of the following medically determinable severe impairments: "degenerative joint disease (DJD) of the right knee, patellofemoral osteoarthritis in both knees, status-post arthroscopic meniscectomy of the bilateral knees; focal tendenopathy on the left; and obesity." (AR at 28.) The ALJ determined, however, that the impairments "do not meet or medically equal any of the listed impairments" in the Act. Though the Court agrees that the ALJ could have provided a more detailed analysis to support his conclusion that the impairments, taken together, do not comprise a disability, the objective medical and non-medical evidence supports the ALJ's finding. As discussed above, none of the

---

[3] The Court notes that there is no evidence suggesting that Plaintiff's hearing impairment, taken in combination with Plaintiff's other medical impairments, prevented him from engaging in sedentary work.

doctors that have treated Glasper during the relevant period opined that he was unable to work. Thus, it is clear that there is substantial evidence in the record supporting the ALJ's conclusion that Glasper's combined impairments do not equal a listed impairment.

### 3. Plaintiff's Residual Functional Capacity

Finally, Plaintiff argues that the ALJ erred in determining that Glasper retains the residual functional capacity to perform the full range of sedentary work. Plaintiff contends that the ALJ ignored the report by Dr. Nor, which appears to state that Glasper cannot work. However, as the ALJ noted, that report indicates that Glasper possessed "[f]unctional capacity adequate to perform normal activities despite handicap, discomfort, or limited mobility of one or more joints." (AR at 178.) Additionally, two other physicians—Dr. Young and Dr. Galish—concluded that Glasper was capable of performing sedentary work. (AR at 237-39, 340.) Moreover, the record shows that Plaintiff was able to work as a receptionist notwithstanding his impairments. Indeed, though not dispositive, the Court notes that Glasper stopped working, not because of his medical condition, but rather because his lack of Spanish language skills interfered with his ability to perform the tasks required of him. Thus, the Court is satisfied that there is substantial evidence supporting the ALJ's conclusion that Glasper had the residual functional capacity to perform the full range of sedentary work.

### III.  CONCLUSION

Based on the foregoing, the Court affirms the Commissioner's decision denying Plaintiff's application for DIB and SSIB.  An appropriate order accompanies this opinion.

/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Dated: November 1, 2006